## IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06-CR-218-MHT |
| | ) | |
| GEORGE HOEY MORRIS | ) | |
| aka JOHNNY RAY FORTUNE | ) | |

### MOTION IN LIMINE:  PROFFER OF AND NOTICE
### OF INTENT TO USE 404(b) EVIDENCE

Comes now the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and respectfully requests this Honorable Court to rule before the trial of this case on the admissibility of evidence of other crimes, wrongs, and acts committed by the defendant, GEORGE HOEY MORRIS aka JOHNNY RAY FORTUNE.   The below listed acts meet the standard of admissibility in this circuit, first established in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920 (1979), now consisting of a three-part test.  See United States v. Giordano, 261 F.3d 1134, 1140 (11th Cir. 2001); United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000); United States v. Miller, 959 F.2d 1535, 1538 (11th Cir.) (en banc), cert. denied, 506 U.S. 942, (1992).

As grounds, the United States sets forth the extrinsic evidence and the law as follows:

### THE ACTS

At the trial of this case, the United States intends to offer the following evidence: that in June 1996, Morris filed a petition for a fiancee visa for a Vietnamese girl born August 2, 1979; that Morris was deported from Vietnam for taking pictures of nude females; that because of the deportation, Morris changed his name to Johnny Ray Fortune in July 1997; that in January

1999, Morris returned to Vietnam and in April 1999, took a 15 year-old girl, by airplane, to Bangkok, Thailand where he had sexual intercourse with her;  took that same 15 year -old girl to Phuket, Thailand, where he had sexual intercourse with her; took that same 15 year-old girl to Phu Quoc, Vietnam, where he had sexual intercourse with her, all felony offenses for which he has been convicted; that in November 1999, Morris  filed a second fiancee visa petition for a 12 year-old Vietnamese girl born August 12, 1987; that in July 2001, Morris filed a third fiancee visa petition for a Vietnamese girl born April 1983; that in 2001,  Morris published a book, "VirginBride.Net", which he intended to be used as a guidebook for those interested in having sexual intercourse with minor females; that Morris was convicted of Sale of Cocaine, a felony, in Adams County, Colorado in 1980; that the defendant was convicted of Visa Fraud in October 2006; and, that Morris was convicted of Being a Convicted Felon in Possession of a Firearm in October 2006.

## THE RULE

Rule 404(b), <u>Federal Rules of Evidence</u> provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order for Rule 404(b) evidence to be admitted, the trial court must determine if the following three-part test for admissibility is satisfied.

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

-2-

Giordano, 261 F.3d at 1140 (quoting Miller, 959 F.2d at 1538).

Rule 404(b) evidence is not confined to prior criminal convictions.  It can consist of uncharged crimes, acts, or other wrongs, and "[i]t is well-settled in this circuit that "the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged, and regardless of whether the activity might give rise to criminal liability."  United States v. Dickerson, 248 F.3d 1036, 1046 (11th Cir. 2001), cert. denied, 536 U.S. 957 (2002) (internal quotations and citations omitted).

## INTENT

Essential to the evaluation of the admissibility of "other acts" evidence is the "purpose for which the 'prior acts' [are] introduced."  United States v. Simon, 839 F.2d 1461, 1471 (11th Cir.), cert. denied, 488 U.S. 861 (1988).  When the evidence is offered to demonstrate intent, the analysis may differ from that of evidence concerning motive, modus operandi, or a common plan or scheme.  See Beechum, 582 F.2d at 912 n.15.  Indeed, "it is crucial to distinguish the use of extrinsic offense evidence to prove issues other than intent.  In other contexts different standards apply because the inference to be drawn from the extrinsic offense is not based upon the reasoning applicable here."  Id.

**1. Relevance**

The first step in the admissibility test of this circuit is to determine if the evidence sought to be introduced is relevant to something other than the defendant's bad character.  The test for relevancy is defined as "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Williams, 816 F.2d 1527, 1531 (11th Cir. 1987) (quoting

Beechum, 582 F.2d at 911).  Initially, then, the question is whether intent is an issue in the

instant case.  Title 18, United States Code, Section 1542, is a criminal statute which requires

proof of specific intent; therefore, intent is an issue in this case.  The Eleventh Circuit has

declared that "[a] defendant who enters a not guilty plea makes intent a material issue which

imposes a substantial burden on the government to prove intent, which it may prove by

qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an

issue." United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998) (per curiam).

Furthermore, "[i]t is well-settled that 'the government may introduce evidence of the defendant's

extrinsic acts to prove intent if the defendant does not 'affirmatively take the question of intent

out of contention by stipulating ... [to] the requisite intent.' "  United States. v. Salery, 830 F.

Supp. 596,  598 (M.D. Ala. 1993) (Thompson, J.) (quoting United States v. Diaz- Lizaraza, 981

F.2d 1216, 1224 (11th Cir. 1993) (internal quotations omitted)).

        Rather than stipulating to the requisite intent for this offense, the United States

expects that Morris will contend that he had no intent to willfully and knowingly make a false

statement in an application for a passport with intent to induce and secure for his own use the

issuance of a passport under the authority of the United States, contrary to the laws regulating

the issuance of such passports and the rules prescribed pursuant to such laws in violation of Title

18, United States Code, Section 1542.

        After intent is recognized as a relevant issue, the next question is whether the

"other acts" evidence offered by the government is relevant to that issue.  This circuit has held

that the "[s]imilarity of the extrinsic acts to the offenses with which [the defendant] is charged is

the standard by which relevancy is measured under rule 404(b)."  Williams, 816 F.2d at 1531

(citing United States v. Kopituk, 690 F.2d 1289, 1334 (11th Cir. 1982), cert. denied, 463 U.S.

1209 (1983)). The Williams Court further stated that "[t]he extrinsic acts must be similar enough [to the charged offense] ... to be probative of [the defendant's] intent." Id. When the issue is intent, "[t]he relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses." Zapata, 139 F.3d at 1358. "Where the state of mind required for both offenses is the same, the extrinsic crime is relevant to the charged offense." Id. "The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." Beechum, 582 F.2d at 911.

In this case, there is no question of the requisite similarity. The extrinsic acts are similar in fact as well as intent. The incidents offered by the government involve Morris willfully and knowingly making false statements in fiancee visa applications; changing his name to avoid detection by authorities of the United States as well as the Socialist Republic of Vietnam; falsely stating that he had not previously been convicted of a felony offense in Colorado; and willfully, intentionally and repeatedly traveling to Vietnam and Thailand under an assumed name to engage in sexual intercourse with underage females.

## 2. Sufficiency of Evidence

Once the government has established that the "other acts" evidence is relevant to an issue other than the defendant's bad character, the next step in the analysis is to determine if the jury could find that the proffered other acts were, in fact, committed. The "task for the trial judge is to determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense." Beechum, 582 F.2d at 913. This circuit has held that "the defendant's commission of the extrinsic offense need not be proven beyond a reasonable doubt or even by clear and convincing evidence," United States v. Perez-Garcia, 904 F.2d 1534,

1545 (11th Cir. 1990) (internal citation omitted).  In fact, the United States "can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur."  United States v. Bowe, 221 F.3d 1183, 1192 (11th Cir. 2000) (citing Huddleston v. United States, 485 U.S. 681 (1988)).

In United States v. Terebecki, 692 F.2d 1345 (11th Cir. 1982), the court observed that the testimony of one witness concerning the extrinsic offense was sufficient to meet the Beechum standard of proof.  Id. at 1349.  Additionally, this circuit has held "[w]ith respect to the second prong, 'the uncorroborated word of an accomplice ... provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under Rule 404(b).'"  Dickerson, 248 F.3d at 1047 (quoting Bowe, 221 F.3d at 1192).

In the instant case, the United States will offer witness testimony and documentary evidence to prove that Morris committed the extrinsic acts.  At the trial of this case, the United States will produce at least one witness who will testify to each extrinsic incident or one document which establishes the extrinsic incident.  This testimony/document satisfies the Eleventh Circuit standard of proof for extrinsic acts.

Since the intent necessary to commit the extrinsic acts is the same as the intent necessary for a Section 1542 violation, and the evidence is sufficient to prove that the extrinsic acts occurred, the United States submits that the first two parts of the test for admissibility of Rule 404(b) evidence in this circuit have been established.

**3. Probative Value Versus Prejudicial Effect**

The third step in the admissibility analysis of "other acts" evidence is to determine that the evidence offered possesses probative value that is not substantially outweighed by any danger of unfair prejudice and that the evidence meets the other requirements

of Rule 403 of the Federal Rules of Evidence. "Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation or inference." Beechum, 582 F.2d at 914 (footnote omitted). In order to determine if the final step in the admissibility test is satisfied, "a court should consider the differences between the charged and extrinsic offenses, their temporal remoteness, and the government's need for the evidence to prove intent." Diaz-Lizaraza, 981 F.2d at 1225 (internal citations omitted).

In the instant case, the United States anticipates that Morris will strongly challenge the United States' proof regarding his knowledge and intent in making the false statement. Intent appears to be a primary defense of Morris at trial. Since Morris is not likely to testify at trial given his prior felony conviction, the United States will have to rely on circumstantial evidence, such as the proffered evidence, to establish Morris' intent to make the false statement in order to gain the issuance of the United States passport under the name Johnny Ray Fortune to enable him to continue travels to Vietnam to have sexual intercourse with underage females. This factor significantly affects the analysis because "the strength of the government's case regarding intent is important in comparing probative value and prejudice." United States v. Delgado, 56 F.3d 1357, 1366 (11th Cir. 1995), cert. denied, 516 U.S. 1049 (1996). "[T]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice." Id. (internal quotations omitted). In the instant case, the extrinsic acts evidence offered is highly probative of Defendant's mens rea.

In considering the differences between the offenses, it should be noted that when extrinsic act evidence is offered as proof of intent "a lesser degree of similarity between the charged crime and the uncharged crime is required" than if the evidence is offered for another

purpose, such as to prove identity. <u>Delgado</u>, 56 F.3d at 1366 (citing <u>United States v. Cardenas</u>, 895 F.2d 1338, 1342 (11th Cir. 1990)). Indeed, "[t]he rule in this circuit is that extrinsic evidence of similar acts will possess great probative value if the defendant's intent is in issue and if the government lacks other strong evidence of defendant's intent." <u>Williams</u>, 816 F.2d at 1532.

In <u>Williams</u>, this circuit noted that "[s]imilarity is a matter of degree," <u>id.</u> at 1531, and upheld the trial court's admission of evidence of two prior rapes in a defendant's trial for assault. <u>See id.</u> at 1532. While noting that rape and assault would not be generally considered as similar acts, the court held that the extrinsic evidence of the two rapes was admissible because the details of the rapes were sufficiently similar to the assaults to be probative of the defendant's specific intent to do bodily harm. <u>See id.</u> at 1531-32.

In <u>United States v. Schardar</u>, 850 F.2d 1457 (11th Cir.), <u>cert. denied</u>, 488 U.S. 932 (1988), the defendant appealed his convictions on wire fraud, making and uttering false bills of lading, and interstate transportation of property taken by fraud. These convictions arose out of five separate but similar transactions involving four different parties. <u>See id.</u> at 1458. In each transaction, the defendant, an exporter and commodities broker, would arrange to export a commodity to a purchaser abroad, who had arranged payment under a letter of credit. <u>See id.</u> After the terms were agreed upon, the defendant would present false invoices and bills of lading to the purchaser's bank, and he would receive payment for goods that were never shipped. <u>See id.</u>

At trial, the district court allowed the testimony of a government witness concerning his negotiations to purchase a commodity from the defendant. The witness testified that at the end of the negotiations he had concluded that the commodity was nonexistent and that

the defendant had intended to give him false bills of lading.  <u>See</u> <u>id.</u> at 1462.  On appeal, the

defendant argued that the trial court erred in allowing this testimony because it was uncharged

misconduct that had occurred nine months after the last shipping fraud act charged in the

indictment.  <u>See</u> <u>id.</u> at 1463.  However, the Eleventh Circuit agreed with the trial court that this

testimony was admissible under Rule 404(b).  <u>See</u> <u>id.</u>  The court held that "[t]he misconduct to

which [the government witness] testified was similar to the misconduct present in the

transactions forming the basis of the criminal charges (creation and use of false bills of lading)

and was relevant to prove appellant [defendant's] intent with regard to the falsification of

documents in the charged offenses."  <u>Id.</u>

      In <u>United States v. Hewes</u>, 729 F.2d 1302 (11th Cir. 1984), <u>cert. denied</u>, 469 U.S.

1110 (1985), the defendants appealed their convictions of various offenses including mail and

wire fraud based on their involvement in fraudulent "bustout" schemes.  <u>See</u> <u>id.</u> at 1306-07.  "A

bustout is a form of planned bankruptcy in which the operators of the bustout company attempt

to obtain merchandise from manufacturers on credit and to defraud their trade creditors."  <u>Id.</u> at

1307.  At trial, the district court allowed the government to admit evidence of other bustout

schemes and other fraudulent franchising schemes in which the defendants were involved but not

charged in the indictment.  <u>See</u> <u>id.</u> at 1313.  On appeal, the defendants argued that this evidence

violated Rule 404(b) in that it was only relevant to the defendants' character, and furthermore,

they asserted that the evidence violated Fed.R.Evid. 403 in that its probative value was

substantially outweighed by its prejudicial effect.  <u>See</u> <u>id.</u> at 1313-14.  The Eleventh Circuit

disagreed. The court found that "[t]he extrinsic acts involved frauds identical to or quite similar

to the bustouts charged in the indictments." <u>Id.</u> at 1314.  The court held that "[t]he defendants

strongly disputed the issue of intent at trial, and the evidence of extrinsic acts was highly

relevant to the jury's determination on that issue." Id. at 1315. The court noted that the defendants had claimed that they were just honest businessmen plagued by a string of bad luck, and "[t]he extrinsic act evidence tended to refute that assertion by showing that the acts alleged in the indictment were not merely isolated, individual business failures but were the components of a pattern of illegal activity." Id. at 1315 n.11.

In the instant case, the extrinsic acts are very similar, if not identical, to the crime charged. Each extrinsic act involves Morris willfully and knowingly planning and acting, intentionally acting to hide evidence of his criminal actions, and intentionally making false statements to either induce, aid, or disguise his criminal actions.

A final measure of the probative value of the extrinsic evidence is the closeness in time of the extrinsic acts to the offenses charged. While "the more time separating the charged and prior offense, the less probative value can be assigned the extrinsic offense," Cardenas, 895 F.2d at 1344, this Court has stated that "'decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test [is] of dubious value.'" Salery, 830 F. Supp. at 599 (quoting United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir.), cert. denied, 502 U.S. 985 (1991)). In fact, in Salery, this Court admitted extrinsic act evidence that occurred over four years prior to the charged offense. See id. Moreover, the Eleventh Circuit has admitted extrinsic evidence that occurred many years prior to the charged offense. See United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (admitting evidence of prior drug dealings that were approximately fifteen years old and involving marijuana in prosecution for conspiracy to distribute cocaine and possessing cocaine with intent to distribute); Pollock, 926 F.2d at 1048 (stating that courts have upheld the admission of Rule 404(b) evidence for acts committed within

five years and in one case, similar acts that "occurred ten and thirteen years earlier than the charged offense").

In the instant case, the extrinsic acts occurred concurrently or within approximately 5 years of the charged conduct. Under this circuit's precedent, the close similarity between the extrinsic and charged conduct increases the probity of the extrinsic evidence, and decreases any prejudicial effect pertaining to the temporal proximity of the extrinsic act evidence.

As to the final Rule 403 balancing considerations, the proffered evidence will not confuse the issues, mislead the jury, or waste time, and its probative value is not substantially outweighed by any unfair prejudice. See Giordano, 261 F.3d at 1141 ("Given the strong probative value as to intent, we conclude under the third prong that the probative value of the 404(b) evidence was not substantially outweighed by undue prejudice...."). This circuit has noted that all relevant evidence is inherently prejudicial for a defendant; therefore, "[o]nly 'unfair' prejudice is prohibited by Federal Rule of Evidence 403." Williams, 816 F.2d at 1532. Furthermore, this circuit has "invariably held that determining prejudice to outweigh probativeness under rule 403 is an exceptional remedy," id., and this is especially the case when the extrinsic evidence is not "of such a heinous nature that [it is] likely to sway the jury irrevocably to a decision of guilt." Id.

The United States asserts that a "common sense assessment of all the circumstances surrounding the extrinsic offense" leads to the conclusion that the probative value of the evidence is not substantially outweighed by Rule 403 considerations. Id. (internal quotation omitted). Moreover, this Court can diminish any possible prejudicial impact of the evidence by giving a proper limiting instruction on the purpose of such evidence. Indeed, such

limiting instructions have been approved and recommended by the United States Supreme Court, see Huddleston, 485 U.S. at 691-92, the Eleventh Circuit, see Diaz-Lizaraza, 981 F.2d at 1225; Cardenas, 895 F.2d at 1344-45, as well as this Court, see Salery, 830 F. Supp. at 599.

Thus, the United States submits that the three-part test for the admissibility of extrinsic act evidence under Rule 404(b) is satisfied in this case.

<u>CONCLUSION</u>

On the basis of the authority cited herein, the United States respectfully requests that the Court GRANT this Motion and ADMIT the above extrinsic act evidence at the trial of this case.

Respectfully submitted this 18th day of October, 2006.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY


LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, AL 36101-0197
334.223.7280
334.223.7135 fax
susan.redmond@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CR. NO.  2:06-cr-218-MHT |
| GEORGE HOEY MORRIS | ) | |

CERTIFICATE OF SERVICE

    I hereby certify that on October 18, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to J.

Carlton Taylor.

<div style="margin-left:50%">

Respectfully submitted,
LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
1 Court Square, Suite 201
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
susan.redmond@usdoj.gov

</div>